# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
## DOCKET NO.

|  |  |
|---|---|
| **LYNNE INGALLS,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,** | ) |
| Defendant. | ) |

## COMPLAINT

The plaintiff, Lynne Ingalls, by and for a complaint against the defendant Minnesota Lawyers Mutual Insurance Company, hereby states as follows:

## INTRODUCTION

Lynne Ingalls ("Ingalls"), brings this case against the defendant, Minnesota Lawyers Mutual Insurance Company ("MLM) based upon Chapters 93A and 176D of the Massachusetts General Laws. The defendant insured Michael Goldstein, an attorney licensed in Massachusetts who held himself out as a bankruptcy practitioner. He represented Ingalls when she sought protection in the United States Bankruptcy Court, District of Massachusetts and failed to confirm whether Ingalls had recorded a valid Declaration of Homestead at the Essex Registry of Deeds prior to filing the petition. Ingalls brought suit in Essex County Superior Court for the Commonwealth of Massachusetts and Attorney Goldstein notified his insurer, the defendant, MLM, who provided a defense for him. Despite the fact that liability became reasonably clear during the litigation, MLM failed and refused to tender a reasonable offer of settlement to

Ingalls.  Ingalls tried the case against Attorney Goldstein in June 2011 and the jury found in her favor.  Thereafter, the Court denied post-trial motions and judgment entered for $70,400.00 plus interest and costs.  Ingalls has filed this suit pursuant to Mass.Gen.L. ch. 93A and 176D.

## FACTS

1. The plaintiff, Lynne Ingalls ("Ingalls"), is an individual who, at all times material hereto, has resided at 12 Nelson Ave, Georgetown, Essex County, Massachusetts.

2. The defendant, Minnesota Lawyers Mutual Insurance Company ("MLM") is an insurance company with a principal place of business at 333 South Seventh Street, Suite 2200, Minneapolis, Minnesota.

3. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.  There is complete diversity between the parties and the amount in controversy exceeds $75,000.

4. In or about January 2008, Ingalls met with Attorney Michael Goldstein ("Attorney Goldstein") in his office in Lynnfield, MA regarding her financial difficulties and whether to consider seeking bankruptcy protection.  Attorney Goldstein held himself out to be skilled and competent in bankruptcy matters.

5. Ingalls retained Attorney Goldstein and on September 20, 2008, Attorney Goldstein filed a bankruptcy petition on Ingalls' behalf in the United States Bankruptcy Court for the District of Massachusetts.

6. Prior to filing the bankruptcy petition, Attorney Goldstein did not perform any investigation to determine whether a valid Declaration of Homestead had been recorded on Ingalls' behalf protecting her residence at 12 Nelson Ave, Georgetown, Massachusetts ("Premises").  He did not travel to the Essex County Registry of Deeds, in Salem, MA nor did he use the on-line database to confirm the recording of a Declaration of

Homestead.

7. Ingalls never provided him with any copy of the Declaration of Homestead.

8. After the bankruptcy petition had been filed, Attorney Goldstein discovered that, in fact, no valid Declaration of Homestead had been recorded.

9. Thereafter, in or about May 11, 2009, Ingalls, by her counsel, sent Attorney Goldstein a demand letter pursuant to Mass.Gen.L. ch. 93A.

10. Attorney Goldstein, by his counsel at Morrison Mahoney LLP, responded to the letter and denied liability and did not make any offer of settlement.

11. In June 2009, Ingalls commenced a lawsuit in Essex County Superior Court on a variety of counts (referred to as the "Malpractice Litigation"), including breach of contract, negligence, and violation of Mass.Gen.L. ch. 93A.

12. In November 2009, Attorney Goldstein was deposed. During that deposition, Attorney Goldstein testified as follows:

> Q. Okay. And in two thousand -- in 2008, did you check the Registry of Deeds to see if the homestead was recorded for a particular client?
>
> A. I did not. . . .
>
> * * *
>
> Q. But at no time -- a copy was obviously not provided to you of the homestead declaration?
>
> A. Clearly, it was not.
>
> Q. Okay. And at any time -- and at no time prior to filing the petition did you check on the Registry of Deeds to see if there was one?
>
> A. No.

3

13. Attorney Goldstein had no specific memory of any of the meetings he had with Ingalls. All his testimony was based solely upon his usual practice.

14. Attorney Goldstein also testified that in the Fall of 2008, he outsourced his bankruptcy petition preparation to a third party. Once Attorney Goldstein sent the materials to the petition preparation company, he never looked at the paperwork again to confirm that all the necessary documents had been sent.

15. Attorney Goldstein never followed up to confirm with the petition preparation company that the Declaration of Homestead had, in fact, been recorded.

16. Attorney Goldstein knew that the Bankruptcy Trustee would want a copy of the recorded Declaration of Homestead with the proper recorder information imprinted thereon or other evidence of proper recording at or prior to the 341 Meeting. The petition preparation service also provided the documents the Bankruptcy Trustee needed in advance of the 341 Meeting. Attorney Goldstein received a copy of the email to the Bankruptcy Trustee advising what documents were enclosed and a confirmatory email from the petition preparation service listing the documents that had been sent. Attorney Goldstein never checked to see if he had a copy of the Declaration of Homestead.

17. Despite these admissions during deposition, no settlement offer was proffered.

18. On or about April 12, 2010, Ingalls, by her counsel, sent a Mass.Gen.L. ch. 93A/176D demand letter to the Defendant. A true and accurate copy of the demand letter is attached hereto as Exhibit A.

19. On or about June 8, 2010, the defendant acknowledged receipt and responded to the demand letter. A true and accurate copy of the response to demand letter is attached hereto as Exhibit B. It denied liability, but offered $10,000.00 to settle the matter.

20. In or about February 2011, Ingalls provided her expert report by Attorney Warren Agin, a bankruptcy attorney who also serves as a Trustee for the United States Bankruptcy Court for the District of Massachusetts, to opposing counsel.

21. Attorney Agin opined that liability for malpractice was reasonably certain in the matter. He further explained that by failing to verify that Ingalls had a validly recorded Declaration of Homestead, Attorney Goldstein had failed to exercise ordinary skill and knowledge.

22. Attorney Agin further opined that because the Declaration of Homestead is so critical and that the failure to have one recorded prior to the filing of the bankruptcy petition cannot be fixed, it is incumbent upon the attorney to verify the information provided by his client.  Attorney Agin further opined that because of the severe consequences that would befall a person seeking bankruptcy protection if a Declaration of Homestead was not properly recorded, a reasonable practitioner could not rely solely on information from the client.

23. Attorney Agin also stated in his opinion that an attorney must review the Declaration of Homestead and other documents relating to title to ensure that the Declaration of Homestead is valid. The Declaration of Homestead could be invalid for other reasons, such as recording in the wrong registry of deeds, containing an incorrect name, address or description or because the debtor did not reside at the home when the Declaration of Homestead was recorded.

24. The Malpractice Litigation was tried before a jury in June 2011 and the jury returned a verdict on the breach of contract count in the amount of $70,400 and on the negligence count in the amount of $70,400.  Judgment entered for $144,800, plus interest.

25. The parties filed a variety of post-trial motions. Attorney Goldstein filed a motion for a new trial and a motion for judgment notwithstanding the verdict. Ingalls sought multiple damages under Chapter 93A. Oral argument was held in September 2011.

26. Subsequent to the jury verdict and while waiting for the Court's decision on the post trial motions, counsel engaged in settlement discussions.

27. Counsel went back and forth several times, but Attorney Goldstein never offered more than $50,000 to settle the matter.

28. In or about March 2012, the Court denied Attorney Goldstein's motion and judgment entered for $87,296.00. On or about March 26, 012, defendant paid $98,018.95 in satisfaction of the judgment, including costs awarded by the Court and post judgment interest.

29. Ingalls incurred legal expenses and expert expenses for trial for which she was not compensated.

30. She was denied use of those funds during the course of the case.

## COUNT I
### Violation of Chapter 93A and 176D

31. Ingalls repeats, realleges and incorporates by reference paragraphs 1 through 30 as if set forth fully herein.

32. The Defendant violated Mass.Gen.L. ch. 93A § 9 and Chapter 176D § 3 by willfully or knowingly engaging in unfair or deceptive insurance trade practices.

33. Defendant failed to effectuate prompt, fair and equitable settlement of the claim where liability had become reasonably clear in violation of Mass.Gen.L. ch. 176D § 3(9)(f).

34. Ingalls was in a precarious financial position and Defendant attempted to use her financial condition to extract a quick and low settlement.

35. As a result of Defendant's actions and unfair or deceptive acts or practices, Ingalls has suffered a loss of money as well as suffered emotional distress.

WHEREFORE, Lynne Ingalls demands that this Court award her the following relief:

1. Enter judgment under Count I of the complaint in an amount to be determined at trial, multiple damages as permitted by Mass.Gen.L. ch. 93A § 9, interest, costs and attorneys fees, as permitted by statute; and,

2. Any other relief this Court deems just and appropriate.

        Respectfully submitted,

        LYNNE INGALLS
        By her attorneys,

        /s/Solomon M. Feldman
        _____

        Solomon M. Feldman
        Law Offices of Solomon M. Feldman
        189 Wells Ave, Suite 200
        Newton, MA 02459
        (617) 796-7711
        BBO # 162280

        /s/ Ellen Rappaport Tanowitz
        _____

        Ellen Rappaport Tanowitz
        BBO 630710
        Amanda E. Thibodeau
        BBO 676152
        Tanowitz Law Office, P.C.
        189 Wells Ave, Suite 200
        Newton, MA 02459
        (617) 965-1130