

MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

June 8, 2010

Solomon M. Feldman, Esq.
199 Wells Avenue, Suite 201
Newton, MA 02459

    Re:    Lynn A. Ingalls v. Michael Goldstein
            Our File No.: 10036621

Dear Attorney Feldman:

    This will acknowledge receipt of your letter dated April 12, 2010 addressed to Mr. Steven G. Brady, President/CEO of Minnesota Lawyers Mutual Insurance Company. I apologize for the fact that somehow this letter did not get scanned and sent to me right away. I am somewhat puzzled as to why our defense counsel was not copied on the letter inasmuch as in Massachusetts, I am advised, defense counsel "is attorney for the insured as well as the insurer". McCourt Co., Inc. v. FPC Properties, Inc., 434 N.E. 2d 1234, 1235 (Mass. 1992).

    Your letter omits many pertinent facts. The client has an associates degree in business and she assured Michael Goldstein, orally and in writing, that there was a homestead exemption recorded on the property she owned with her sister. Your letter acknowledges that at the outset of the representation, your client was asked to complete a homework assignment which included providing a copy of her declaration of homestead exemption. (p. 2). Your letter acknowledges there were handwritten check marks on page 2 next to "Homestead Exemption", but then asserts "Neither party could recall who made that check mark or why it had been made." (p. 4). In fact, your client testified, initially, that the handwriting on this document was hers (October 29, 2009 deposition, p. 10), but then, as with many other questions, could not recall whether the check mark was hers. (Id. at p. 11). In contrast, Mr. Goldstein testified:

> I cannot state for certain; but its - - I believe those are Ms. Ingalls' check marks. They are not my handwriting. And, as Ms. Ingalls and I were the only two at the meeting - . . . .

(November 9, 2009 deposition, p. 43)(emphasis added).

    In addition, your client reviewed Schedule C and initialled the document indicating that she had a homestead exemption on file. Massachusetts follows the general rule that one who signs a legal document without reading its contents is bound by its terms as if the person had been fully apprised of those terms. Hull v. Attleboro Sav. Bank, 33 Mass. App. Ct. 18, 24

Regional Offices
Philadelphia, PA / Richmond, VA / Towson, MD / Chicago, IL

phone 800.422.1370
fax 800.305.1510
www.mlmins.com / info@mlmins.com

333 South Seventh Street
Suite 2200
Minneapolis, MN 55402

Solomon M. Feldman, Esq.
June 8, 2010
Page 2

(1992)("one who signs a writing that is designed to serve as a legal document. . . is presumed to know its contents"). Further, at the 341 meeting, Ms. Ingalls testified that everything in the bankruptcy petition and schedules was accurate and at that meeting signed, under the pains and penalties of perjury, a homestead affidavit. After the meeting she represented that she would obtain a copy of the homestead exemption from the closing attorney.

You cite two cases which have little to do with the situation presented here. In Milavetz, Gallp & Milavetz, P.A. v. United States, 130 S. Ct. 1324 (March 8, 2010), the Court merely decided that, as you acknowledge, attorneys are debt relief agencies. In re: Daryl Withrow, 391 B.R. 217 (Bankr. D. Mass. 2008) is factually distinguishable in numerous respects. In that case, the court stated that:

> Indeed, courts must be very, very, very careful not to impose debtors' counsel burdens which are impractical under the circumstances of their representation. Bankruptcy judges should appreciate their vulnerability falling down the infamous "slippery slope" and bear in mind that an attorney for a debtor is not a guarantor of the accuracy of any information contained in bankruptcy documents by the attorney with information provided by that debtor. Some debtors are simply not capable of producing all the documentation that an attorney might prefer. Such a debtor should not be turned away from legal representation or ask for a fee which is more consistent with an audit than with the preparation of the bankruptcy schedules. Nor should an attorney fear to represent such a debtor. Judges can be relied upon, in most instances, to recall the difficulties of private practice.

391 B.R. at 227.

Our defense counsel is unable to locate any case in the United States in which a college educated client succeeded in the malpractice claim against a bankruptcy attorney in circumstances presented here: The client repeatedly represents that there is a homestead exemption and the attorney believes the client.

Even if there were liability imposed based solely upon this, Massachusetts has recognized the doctrine of comparative negligence in legal malpractice cases. Clark v. Rowe, 428 Mass. 339, 343-45 (1998).

There is also a duty to mitigate damages. Mr. Goldstein offered to assist in mitigating damages; however, his offer was turned down.

As to the actual damages incurred by your client, your letter claims $100,000 without any explanation as to how this number is reached. This number bears no relationship to your client's answers to interrogatories. It appears to have been plucked out of thin air.

Solomon M. Feldman, Esq.
June 8, 2010
Page 3

    Your letter also claims that no offer has been made. According to our defense counsel, we have yet to receive a demand from your office prior to your letter of April 12, 2010.

    It is our understanding that Chapter 93A and 176D, §3(9)(f) applies only when liability is reasonably clear. Liability is not reasonably clear in this case. Although there is no obligation to make an offer under Chapter 93A in the interest of resolving the matter, Minnesota Mutual is willing to offer $10,000 to resolve your client's claim against Mr. Goldstein.

                              Very truly yours,

                              Angela Hoppe

cc:

Richard L. Neumeier, Esq.
Michael Goldstein, Esq.