UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11057-GAO

LYNNE INGALLS,
Plaintiff,

v.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,
Defendant.

ORDER
July 29, 2013

O'TOOLE, D.J.

This case, alleging violations of Massachusetts General Laws chapters 93A and 176D, arises out of a legal malpractice claim made by the plaintiff against the defendant's insured. The plaintiff claims that the defendant violated ch. 176D, §3(9)(f) by failing to make a reasonable settlement offer when liability had become "reasonably clear." The defendant has moved for summary judgment.

The following facts appear undisputed from the record. In 2008, Ingalls hired attorney Michael Goldstein (defendant's insured) to file a bankruptcy petition. As filed, the petition scheduled $36,463 in unsecured debt. Before the petition was prepared and filed, Ingalls told Goldstein that she had filed a homestead declaration on real estate jointly owned with her sister. She also signed an affidavit attesting to this fact and testified consistently at a hearing in the bankruptcy court. Goldstein did not independently confirm that there was a homestead declaration of record, and eventually, it was discovered that there was not. As a result, the real estate was exposed to the claims of creditors. Ingalls filed a malpractice action against Goldstein in the Massachusetts Superior Court, claiming principally that he had been negligent in failing to

verify that she had recorded a valid homestead declaration. Goldstein asserted that the plaintiff had been contributorily negligent in telling him and the bankruptcy court that the homestead declaration existed. In Massachusetts, the comparative negligence statute applies to claims of legal malpractice and may reduce or defeat a plaintiff's recovery of damages. Clark v. Rowe, 701 N.E.2d 624, 628 (Mass. 1998).

While the action was pending, the plaintiff sent the defendant here a demand letter under chapter 93A, presenting a settlement demand of $100,000. Shortly afterward the defendant countered with an offer of $10,000 to settle the case, which was not accepted. The plaintiff did not reduce her demand and the defendant did not increase its offer. The case went to trial in June 2011 and the plaintiff prevailed. There were some post-trial issues, some resolved favorably to the defense, and in March 2012 final judgment entered. The defendant promptly tendered the full amount of the judgment to the plaintiff.

The defendant's motion for summary judgment argues that liability was never "reasonably clear" prior to the jury verdict, so that there was no violation of the standards of claim resolution set forth in M.G.L. ch. 176D, §3(9)(f).

For the purposes of the statutory standard, liability encompasses both fault and damages, so if damages are contested in good faith, then liability on the claim is not reasonably clear. Clegg v. Butler, 676 N.E. 2d 1134 (Mass. 1997). This is especially true in cases involving comparative negligence. In such circumstances, even if fault has been determined, if the percentage of potential damages attributable to the defendant is the subject of a good faith disagreement, then liability is not clear. Bobick v. U.S. Fid. & Guar. Trust Co., 790 N.E. 2d 653, 659 (Mass. 2003). See also Scott v. Vermont Mut. Ins. Co., 2011 WL 4436984 at *8 (D. Mass.

Sept. 22, 2011). Accordingly, reasonable uncertainty as to either the total amount of damages or the defendant's comparative share may prevent liability from being reasonably clear. Id.

Here, it is plain from the record that damages in the underlying malpractice action were never reasonably clear prior to trial. At the time the plaintiff initially made a demand of $100,000, she had paid Goldstein a $1500 fee for preparing the bankruptcy documents and a filing fee of $299. In addition to these costs, her bankruptcy petition listed unsecured claims of $36,463.00. There was no other specific information about additional amounts of damage.

In July 2009, in answering defendant's interrogatories, Ingalls estimated her damages, without specification, at approximately $60,000 plus.  (Aff. of Angela Hoppe, Ex. 2 at 37 (dkt. no. 8)..) In answer to a second set of interrogatories answered in March 2010, she said:

> Ingalls states she has a total of $36,463.00 scheduled claims. There may be other claims that have not yet been filed in the case, plus attorney's fees, interest and administrative fees, including, but not limited to trustee fees and trustee attorney fees, accounting fees, and tax liabilities, that cannot be calculated at this time.

(Affidavit of Richard L. Neumeier, Ex. 1 at 6 (dkt. no. 9).)

In February 2011, Ingalls supplemented her previous answer regarding damages:

> As set forth in Attorney Warren Agin's expert report, to pay my creditors, the accountant, interest, the trustee, counsel and the claims themselves, will total approximately $76,500. In addition, I have incurred costs by hiring Attorneys Weinberg, Feldman and Tanowitz and litigating this lawsuit. I seek these damages as damages, in addition to costs recoverable by statute.

(Id. at 12.) Throughout the pretrial period, the plaintiff's demand remained at $100,000.

After the jury verdict, which assessed the plaintiff's single damages at $70,400 (Aff. of Angela Hoppe, Ex. 2 at 55), the defendant made settlement offers of $60,000 (id. at 66) and then $75,000 (id. at 74). (There were outstanding post-trial motions that attacked the jury's verdict.) The plaintiff raised her demand to $133,000. (Id.) As noted above, ultimately the post-trial

motions were resolved and the defendant tendered the full amount of the final judgment together with accrued interest, which came to $98,018.95. (Id. at 107-108.)

While Goldstein's negligence in failing to verify the existence of a homestead declaration was clear, the damages caused by that negligence were not. Judging by the plaintiff's evolving answers to damages interrogatories, even she was not entirely certain what her damages were. Those answers appeared to be more estimates than calculations, and they were all significantly lower than her settlement demand. Moreover, because they were an assessment of likely future damages, not already incurred damages, they had something of a speculative or contingent quality. As the insurer's counsel kept pointing out to his client, in the pretrial period there was no evidence of actual out of pocket damages. In addition to this uncertainty, there was the possibility that total damages would be reduced to account for some contributory negligence on the plaintiff's part in giving incorrect information to Goldstein.

On the summary judgment record, it is impossible to conclude in the plaintiff's favor that "no reasonable insurer would have failed to settle the case." See Hartford Casualty Ins. Co. v. New Hampshire Ins. Co., 628 N.E.2d 14, 18 (Mass. 1994). It is especially doubtful that a reasonable insurer would have settled at the plaintiff's demanded settlement figure. The plaintiff cannot prevail on her claim, and summary judgment in the defendant's favor is justified.

The defendant's Motion for Summary Judgment (dkt. no. 6) is GRANTED. Judgment shall enter for the defendant.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge